UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

URIAN R. STURGIS and
JENNIFER STEPHENS, and
Y.S., et al, minor children, through parents
URIAN R. STURGIS, Sr. and
JENNIFER STEPHENS,

      Plaintiffs,

v.                                        Case No. 06-13890

KAREN HAYES, BERNICE                  HON. AVERN COHN
HARRIS, MICHAEL PATTY,
VIVIAN HURST, SARAH ZACHMANN,
JENNIFER STEVENS, ST. FRANCIS
CATHOLIC SOCIAL SERVICES, and
KIANA BOGAN,

      Defendants.

_____/

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
DISMISSING CASE**

I. Introduction

This is a cases challenging defendants' actions resulting in the removal of

plaintiffs' minor children and subsequent termination of plaintiffs' parental rights.

Plaintiffs Jennifer Stephens and Urian R. Sturgis, proceeding pro se and in forma

pauperis, filed this action[1] on behalf of themselves and their minor children:  Yahrael

Sturgis; Raymoni Sturgis; Zavonte Sturgis; and Suave Sturgis.  The named defendants

---

[1]This case, case no. 06-13890 was consolidated with case no. 07-11301.  As will
be explained, case no. 07-11301 added Hurst and Bogan as defendants.

and their role follows:

| Defendant | Role |
|---|---|
| Karen Hayes | Employee of Michigan Department of Human Services |
| Bernice Harris | Employee of Michigan Department of Human Services |
| Michael Patty | Employee of Michigan Department of Human Services |
| Vivian Hurst | Employee of Michigan Department of Human Services |
| St. Francis Catholic Social Services (St. Francis) | Private, non-profit, child placing agency licensed by the State of Michigan to supervise foster care and child placement |
| Sarah Zachman | Employee of St. Francis |
| Jennifer Stevens | Employee of St. Francis |
| Kiana Bogan | Employee of St. Francis |

Plaintiffs seek damages and injunctive relief. As will be explained, this case is on remand from the Court of Appeals for the Sixth Circuit. Following remand, on September 2, 2008, the Court held a status conference on the record with the parties. Following the conference, the Court entered an order which provided, inter alia, (1) that defendants file dispositive motions by September 23, 2008 and (2) that the Court hold a hearing on October 1, 2008 to discuss the motions and whether appointment of counsel is appropriate for plaintiffs. The Court also told plaintiffs not to file a response to the motions until after the hearing. At the hearing on October, 1, 2008, plaintiffs articulated the parameters of their claims. After the hearing, the Court directed defendants to

2

supplement their motions for summary judgment in light of plaintiffs' statements at the hearing. Defendants have supplemented their summary judgment papers which are now before the Court. Plaintiff has responded to defendants' papers. Also before the Court is plaintiffs' motion for summary judgment. For the reasons that follow, defendants' motions for summary judgment will be granted, plaintiffs' motion for summary judgment will be denied, and the case will be dismissed.

## II.  Background

This is plaintiffs' second and third actions filed in this court challenging the removal, foster care placement, and eventual termination of plaintiffs' parental rights to their four children.

On July 18, 2006, plaintiffs filed case no. 06-13243 (Sturgis I). They sued on behalf of themselves and their minor child, Yahrael Sturgis. They named Sarah Zachman, Jennifer Stevens, Michael Patty, Karen Hayes, Bernice Harris, Richard McKnight and Laura Sheldon as defendants. Plaintiffs asserted several claims against defendants under state and federal law, including:  civil conspiracy, criminal conspiracy, hindering prosecution, fraud, misuse of federal funds, intimidation, harassment, coercion, perjury, obstruction of justice, malicious prosecution and bribery. They cited various statutes, including 18 U.S.C. §§ 2, 3, 4, 241, 286, 645, 666, 1001, 1341, 1512, 1621, 1623, 1968; and 42 U.S.C. §§ 1901-63, and 1983. They also alleged that their First, Fourth, Seventh, and Fourteenth Amendment rights were violated. They sought declaratory, injunctive, and monetary relief. The Court dismissed the case, sua sponte, as frivolous under 28 U.S.C. § 1915(e)(2). Plaintiffs did not appeal the dismissal.

On August 31, 2006, plaintiffs filed case no. 06-13890 (Sturgis II). This case

3

added plaintiffs older children, Raymond Sturgis, Zavonte Sturgis, and Suave Sturgis as additional named plaintiffs.  They also added two additional named defendants, Sarah Zachman and St. Francis, and removed Richard McKnight and Laura Sheldon.  The facts and claims were the same.  Plaintiffs again raised claims under 42 U.S.C. § 1983 for violations of the Fourth Amendment, denial of Fourteenth Amendment due process, infringement on plaintiffs' rights to familial integrity.  They also alleged negligence, fraud, perjury, and discrimination.  Again, they sought unspecified monetary relief, injunctive relief and declaratory relief.

Defendants filed motions to dismiss.  The Court dismissed the case on the grounds that plaintiffs' claims were barred by the Rooker-Feldman doctrine.  Plaintiffs appealed.  The Sixth Circuit reversed on the grounds that Rooker-Feldman did not bar plaintiffs' claims, but left open whether other grounds existed which would support dismissal of the case.  The court of appeals explained:

> Because the plaintiffs do "not complain of an injury caused by a state court judgment, we find that [they are] asserting independent claims, which are not barred by Rooker-Feldman." . . .
> Although Rooker-Feldman doctrine does not apply, "the Supreme Court has instructed that preclusion law is the appropriate solution for these independent claims." . . . . we leave to the district court on remand the determination of the applicability of the doctrines of preclusion and any other remaining matters."

Sturgis v. Hayes, No. 07-2365 (6th Cir. June 11, 2007) (unpublished), slip op. at 10.

On March 26, 2007, during the appeal of Sturgis II, plaintiffs filed case no. 07-11301 (Sturgis III).  This case deleted plaintiff's older children and substituted as named defendants other employees of the same organizations as Sturgis I and Sturgis II,

namely Vivian Hurst, Kiana Bogan, and David Wolock.[2]  The facts and claims remained the same.

Following remand of <u>Sturgis II</u>, the Court consolidated <u>Sturgis II</u> and <u>Sturgis III</u>. All papers are docketed under <u>Sturgis II.</u>

B.

Jennifer Stephens is the biological mother of Zavonte Stephens and Suave Stephens.  Jennifer Stephens and Urian Sturgis are the biological parents of Raymoni Sturgis and Yahrael Sturgis.

As noted above, Harris, Hayes, Patty, Hurst, and Bogan are employees of the Michigan Department of Social Services, Child Protective Services (CPS), the agency involved in terminating plaintiffs' parental rights.  These defendants may be collectively referred to as "the State Defendants."  St. Francis contracts with CPS to assist in foster care placements.  St. Francis employees Zachman, Stevens, and Bogan  were involved in foster care placement of plaintiffs' children.  These defendants may be collectively referred to as "the St. Francis Defendants."

In May 2004, then two-year old Suave Stephens was badly burned by "scalding hot water" while being potty trained by Sturgis.  Stephens took Suave to a doctor who alerted CPS.  CPS visited the home in June 2004 but did not remove the children.

On September 27, 2004, CPS received a second referral that Suave had suffered new injuries.  CPS visited the home on September 30 and interviewed then eight year old Zavonte Stephens who confirmed abuse by Sturgis.

---

[2]Plaintiffs asserted a copyright claim against Wolock.  Wolock filed a motion to dismiss, which the Court granted.

5

On October 18, 2004, Sturgis was arrested for second degree child abuse.  The police were unable to proceed with the charge because Stephens refused to cooperate.

On October 25, 2004, CPS initiated Neglect Proceedings by petitioning the Family Court for an order to remove Zavonte and Suave from the home.  The Wayne County Family Court (Family Court) issued an Order to remove the children pending a preliminary hearing and place them in protective custody that same day.  The court's order stated in part:

> . . . there are reasonable grounds for removal of the minor(s) from the parent . . . because . . . conditions or surroundings of the child(ren) are such as to endanger the health, safety, or welfare of the child(ren) and it is contrary to the welfare of the child(ren) to remain in the home because mother's LTP [Live Together Partner, i.e. Sturgis] is a sex offender and still has access for the children although mother was told to keep LTP away from her children after LTP burned Suave with hot water.

Ex. 1 to the St. Francis Defendants' Second Motion for Summary Judgment - Court order.

A preliminary hearing was held on October 27, 2004.  It is not clear whether Sturgis and Stephens were present at the hearing.  The biological father of Suave and Zavonte,however, was present and represented by counsel.  At the hearing, Hayes, who authored the petition for removal, testified that the children had not been removed in June 2004 at the time Suave was burned because Sturgis was arrested at that time and Stephens was cooperating with the prosecution and informed Hayes that she would terminate all further contact with Sturgis.  See Ex. 2 to the St. Francis Defendants' Second Motion for Summary Judgment - transcript of hearing at p. 4-5.  Hayes also testified that she later learned Stephens was no longer cooperating with the prosecution and then a second referral on Zavonte was received.  See id.  She also stated that

6

neither child or their parents were Native Americans.  See id. at 5.  Hayes further

testified that placement with the biological father was not suitable as he had been

recently released on parole.  Id. at 6.  The Family Court found probable cause to believe

one or more allegations of abuse listed in the petition and ordered the children be

placed in foster care.  Id. at p. 7-9.

At the next hearing on November 17, 2004, Stephens was present and

represented by counsel.  She informed the Family Court that she did not have any

relatives with whom to place the children.  Ex. 3 to the St. Francis Defendants' Second

Motion for Summary Judgment - hearing transcript at p. 8.

At some point, Suave and Zavonte were placed in the care of St. Francis.

Raymoni Sturgis was born on December 16, 2004, while neglect proceedings

involving Suave and Zavonte were pending.  On December 21, 2004, the Family Court

ordered that Raymoni be removed from the home pending a preliminary hearing due to

risk of possible abuse.  Ex 4 to the St. Francis Defendants' Second Motion for Summary

Judgment - court order.  The order stated in part:

> . . . there are reasonable grounds for removal . . . there is probable cause
> to believe the child is at risk in that two other siblings were recently placed in
> foster care due to physical abuse by the parents of the above-mentioned
> newborn.

A preliminary hearing was held on December 22, 2004.  Stephens and Sturgis

were present and represented by counsel.  Plaintiffs waived reading of the petition and

did not contest a probable cause determination of sufficient basis for remove Raymoni.

Ex. 5 to the St. Francis Defendants' Second Motion for Summary Judgment - hearing

transcript at p. 13.  Raymoni was also placed in the care of St. Francis with his half-

siblings Suave and Zavonte.  It appears that plaintiffs were given supervised visits with the minor children.  See id.

Neglect proceedings involving Suave, Zavonte, and Raymoni proceeded together in Family Court.  At a hearing held on March 16, 2005, Stephens and Sturgis appeared and were separately represented.  Each pleaded "no contest" to neglect.   Ex. 6 to the St. Francis Defendants' Second Motion for Summary Judgment - hearing transcript at p. 8, 10-11.

During the neglect proceedings, Stephens and Sturgis were provided, and participated in, numerous services to assist them in getting their children back, including individual counseling, parenting classes and anger management classes.  Ex. 7 to the St. Francis Defendants' Second Motion for Summary Judgment - Report and Recommendation of Referee.  However, a referee found that both has failed to complete and benefit from these services and recommended that plaintiffs' parental rights be terminated, noting in part the "horrific" abuse the children suffered.  Id. at p. 2.

Eventually, the cases went to trial.  The trial spanned several days over the course of four months in 2006.  Sturgis and Stephens were represented by counsel.  At trial, Stevens testified that Sturgis often complained of "racism" by the St. Francis Defendants and the "system."  She also testified that Sturgis complained that the minor children were placed in a Caucasian "racially incongruent" home.  See Ex. 8 to the St. Francis Defendants' Second Motion for Summary Judgment - trial transcript at p. 107-110.  The report of the Family Court referee, noted above, was also introduced into evidence.  After trial, the Family Court terminated Stephens and Sturgis' parental rights.

Plaintiffs appealed, separately, and raised several arguments on appeal.  The

8

appeals were consolidated.  Stephens and Sturgis alleged several defects in the termination proceedings, including failing to take into account the children's status as Native Americans, erroneously admitting Zavonte's hearsay statement regarding abuse, and a general lack of evidence to terminate their rights.

The Michigan Court of Appeals affirmed.  The court of appeals held that with respect to Stephens, sufficient evidence existed to support the termination her parental rights based on (1) a failure to protect, (2) conditions leading to adjudication continue to exist, (3) failure to provide proper care or custody, (4) reasonable likelihood of harm if child returns to the home.  With respect to Sturgis, the court of appeals held his rights were properly termination based on (1) abuse, (2) failure to protect, (3) conditions leading to adjudication continued to exist, (4) failure to provide proper care, (5) reasonable likelihood of harm if child returns home, and (6) abuse of a sibling.  In re Stephens, et al, Nos. 271015, 271016, 2007 WL 948879, (Mich. Ct. App. Mar. 29, 2007) (unpublished).

With respect to plaintiffs' other claims, the court of appeals found that there was no error in admitting the hearsay statements by Zavonte.  Id.  The court of appeals further found that there was no evidence of record to indicate that any of the minor children were of Native American heritage.  Id.

The Michigan Supreme Court denied leave to appeal, In re Stephens, 478 Mich. 938 (2007), and reconsideration of the denial, In re Stephens, 479 Mich. 858 (2007). The United States Supreme Court denied certiorari.  Sturgis v. Mich. Dep't of Human Servs., 128 S. Ct. 617 (2007).

After plaintiffs' appeals were exhausted, Raymoni was adopted.  The adoption

9

was finalized on August 3, 2007.  Suave and Zavonte were eventually reunited with their biological father.

Yahrael was born to Stephens and Strugis in February 2006, during the trial involving the other minor children.  She was removed from Stephens and Sturgis' care by order of the Family Court on March 2006.  See Ex. 10 to the St. Francis Defendants' Second Motion for Summary Judgment - court order.  A trial was held in Family Court in 2007 where both Sturgis and Stephens were separately represented.  At the beginning of the trial, the family court judge reviewed the status of the efforts to verify Sturgis and Stephens' claims of possible Native American heritage, essentially indicating there was insufficient evidence.  See Ex. 11 to St. Francis Defendants' Second Motion for Summary Judgment - trial transcript at p. 5-7.  Stephens and Sturgis separately appealed, contesting only the sufficiency of the evidence for terminating of their parental rights.  The Michigan Court of Appeals affirmed.  In re Sturgis, Nos. 280118, 280119, 2008 WL 2068266 (Mich. Ct. App. May 15, 2008) (unpublished).  The court of appeals cited substantially the same grounds for termination as in In re Stephens.  The court of appeals also noted that Sturgis' complaints of racism and corruption "demonstrate a pattern of blaming others rather than accepting responsibility for his actions."  In re Sturgis, slip op. at p. 3.

Yahrael was subsequently adopted.

### III.  Plaintiffs' Claims

The complaint in Sturgis II contains the following counts:

Count 1 - violation of First Amendment under § 1983
Count 2 - violation of Due Process under § 1983
Count 3 - violation of "Famial [sic] Integrity" under § 1983

10

Count 4 - Negligence
Count 5 - Fraud
Count 6 - Perjury
Count 7 - Discrimination

The complaint in <u>Sturgis III</u> contains the following counts:

Count 1 - Violation of § 1983 - Fourth Amendment
Count 2 - Violation of First, Ninth, Fourteenth Amendments
Count 3 - Negligence
Count 5[3] - Federal Copyright Law
Count 7[4] - Slander and Harassment

At the October 1, 2008 hearing, plaintiffs identified their claims as follows:

1.    Unconstitutional search and seizure
2.    Race Discrimination
3.    Fraud
4.    Perjury

It is these four claims upon which the Court will based its decision.

### IV.  Parties' Arguments

The St. Francis Defendants argues that complaint must be dismissed because plaintiffs do not state a viable claim, they are barred by the domestic relations exception, plaintiffs' lack standing, defendants are entitled to immunity, and plaintiffs; fraud claims are barred by res judicata and/or collateral estoppel.

The State Defendants argue that the complaint must be dismissed on the grounds of res judicata and/or collateral estoppel.  In addition, they argue that (1) plaintiffs lack standing to sue on behalf of their children whom their rights have been terminated, (2) a claim that the children were seized without a court order is belied by

---

[3]There is no Count 4.

[4]There is no Count 6.

the record, (3) plaintiffs fail to state a claim for injunctive or declaratory relief, (4)

plaintiffs federal civil rights claims are barred by qualified immunity or absolute quasi

judicial immunity or witness immunity, (5) plaintiffs state law claims are barred by state

immunity law, and (6) plaintiffs copyright claims, to the extent asserted against

defendants, fail for the same reason as their claim against Wolock.[5]

Plaintiffs filed a response to defendants motions and a separate motion for

summary judgment.  To the extent plaintiffs' papers can be understood, plaintiffs argue

that they have standing to pursue their claims based on the Sixth Circuit's decision,

defendants are not entitled to immunity, plaintiffs claims are not barred by res judicata

or the domestic relations exception based on the Sixth Circuit's decision.  Plaintiffs also

argue that they have stated claims for race discrimination and fraud.  Plaintiffs also

assert that the minor children were unconstitutionally removed from their care.

## V.  Legal Standards

In facing a motion to dismiss for failure to state a claim under Fed. R. Civ. P.

12(b)(6) "[t]he court must construe the complaint in the light most favorable to the

plaintiff, accept all the factual allegations as true, and determine whether the plaintiff

can prove a set of facts in support of its claims that would entitle it to relief."  Bovee v.

Coopers & Lybrand C.P.A., 272 F.3d 356, 360 (6th Cir. 2001).  As the Supreme Court

held in Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007), a complaint must be

dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be

---

[5]Because plaintiffs did not identify a copyright claim at the hearing, the Court will
not specifically address this claim.  However, to the extent that plaintiffs assert a
copyright claim against the State Defendants, it fails for the same reasons as plaintiffs'
previously dismissed claim against Wolock.

granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face."  Id. at 1974 (rejecting the traditional Rule 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp., 127 S.Ct. at 1964-65 (citations omitted); Association of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007).  Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp., 127 S.Ct. at 1965 (citations omitted).

As noted above, plaintiffs have set forth a fraud claim against defendants which implicates the requirements under Fed. R. Civ. P. 9(b). Rule 9(b) provides that,

> [i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed. R. Civ. P. 9(b).  When analyzing the question of whether a party has complied with the Rule 9(b) requirement to plead fraud with particularity, the Court must also consider the "short and plain statement of the claim" requirement of Rule 8(a)(2).  Fed. R. Civ. P. 8(a)(2); Sanderson v. CA-The Healthcare Co., 447 F.3d 873, 876 (6th Cir. 2006). "'Rule 9(b)'s particularity requirement does not mute the general principles set out in Rule 8; rather, the two rules must be read in harmony.'"  Sanderson, 447 F.3d at 876 (quoting Michaels Bldg. Co. v. Ameritrust Co., 848 F.2d 674, 679 (6th Cir.1988)).  In order to comply with Rule 9(b), a pleading must, at a minimum, include allegations as to

"the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." United States ex rel. Bledsoe v. Cmty. Health Sys., Inc., 342 F.3d 634, 643 (6th Cir. 2003) (quoting Coffey v. Foamex L.P., 2 F.3d 157, 161-62 (6th Cir. 1993)). A pleading that fails to comply with the requirements of Rule 9(b) fails to state a claim under Rule 12(b) (6). Michigan ex rel. Kelley v. McDonald Dairy Co., 905 F. Supp. 447, 450 (W.D. Mich. 1995).

With respect to summary judgment, summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion. See Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see also Anderson, 477 U.S. at 249-50. Additionally, and significantly, "affidavits containing mere conclusions have no probative value" in

14

summary judgment proceedings.  Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir.

1968).  Determining credibility, weighing evidence, and drawing reasonable inferences

are left to the trier of fact.  See Anderson, 477 U.S. at 255.  Only where there are no

genuine issues of material fact and the moving party is entitled to judgment as a matter

of law may summary judgment be granted.  Thompson v. Ashe, 250 F.3d 399, 405 (6th

Cir. 2001).

VI.  Analysis

A.  Standing

Defendants both argue that plaintiffs lack standing to pursue any claims on

behalf of their minor children.  The Sixth Circuit has already spoken on this issue,

stating:

> The defendants in this case assert that Stephens and Sturgis lacked
> standing to bring this suit because the state of Michigan has terminated their
> parental rights.  Although parents cannot bring a suit on behalf of children for
> whom they have no legal responsibility, Elk Grove Unified Sch. Dist. v. Newdow,
> 542 U.S. 1, 17-18 (2004), parents may file complaints to enforce their own rights,
> Winkelman v. Parma City Sch. Dist., __ U.S. __, 127 S. Ct. 1994, 2006 (2007)
> (IDEA claims).  While Stephens and Sturgis did sue on behalf of their children,
> they also brought all of their claims on their own behalf.  Thus, Stephens and
> Strugis had standing to bring this suit in their own names, and the issue of their
> standing to bring claims on behalf of their children need not be resolved.

Sturgis v. Hayes, No. 07-2365, slip op. at p. 6.  Defendants are correct that the Sixth

Circuit did not resolve the issue of standing; however, the Sixth Circuit clearly pointed

out that plaintiffs have standing to pursue claims on their own behalf.  Contrary to

plaintiffs' assertion, the Sixth Circuit also noted that plaintiffs do not have standing to

pursue claims on behalf of their minor children because their parental rights have been

terminated.  Thus, to the extend plaintiffs are asserting claims only on behalf of their

15

minor children, not themselves, they lack standing.  However, plaintiffs do have standing to assert claims on their own behalf.

### B.  Domestic Relations Exception

The St. Francis defendants argue that all of plaintiffs claims against them are barred by the domestic relations exception to federal jurisdiction.  This Supreme Court explained the doctrine in <u>Ankenbrandt v. Richards</u>, 504 U.S. 689 (1992), stating that "the relations exception . . . divests the federal courts of the power to issue divorce, alimony, and child custody decrees."

Here, to the extent that plaintiffs seek the return of their minor children within the rubric of their claims, such a request is barred by the domestic relations exception.  As the St. Francis defendants point out, such a remedy would require this Court to overturn two decisions of a Family Court to terminate their parental rights, both of which were affirmed on appeal in the Michigan Court of Appeals.

### C.  Res Judicata and Collateral Estoppel

Both defendants argue that plaintiffs claims are barred by the res judicata and collateral estoppel.  The elements of these defenses are governed by state law. <u>McCormick v. Braverman</u>, 451 F.3d 382, 393 (2007).  The Full Faith and Credit Act, 28 U.S.C. § 1738, requires the federal courts to give state court judgments the same preclusive effect that the state would afford such judgments.  <u>Parsons Steel, Inc. v. First Alabama Bank</u>, 474 U.S. 518, 523.  Under Michigan law, a party may not bring a second, subsequent action when "(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first."  <u>Adair v. State</u>, 470 Mich. 105, 680

16

N.W.2d 386, 396 (2004).  This requirement reflects a transactional approach to res

judicata whereby the doctrine "bars not only claims already litigated, but also every

claim arising from the same transaction that the parties, exercising reasonable

diligence, could have raised but did not."  Id.; cf. Restatement (Second) of Judgments

§§ 24, 25 (1982).  In determining whether a group of facts constitutes a transaction for

purposes of res judicata , a court must consider "whether the facts are related in time,

space, origin or motivation, and whether they form a convenient trial unit."  Adair, 680

N.W.2d at unconstitutional.

      With respect to collateral estoppel, Michigan has three requirements: "(1) 'a

question of fact essential to the judgment must have been actually litigated and

determined by a valid and final judgment'; (2) 'the same parties must have had a full

[and fair] opportunity to litigate the issue'; and (3) 'there must be mutuality of estoppel.' "

Monat v. State Farm Ins. Co., 469 Mich. 679, 677 N.W.2d 843, 845-46 (2004) (alteration

in the original) (quoting Storey v. Meijer, Inc., 431 Mich. 368, 429 N.W.2d 169, 172 n. 3

(1988)).  As to the third requirement, Michigan allows the defensive use of collateral

estoppel against a prior plaintiff.  Id. at 850-51.

      Here, as the State Defendants point out, all of plaintiffs' claims were raised in

Sturgis I which was sua sponte dismissed as frivolous and for failure to state a claim

under § 1915(e)(2).  A dismissal under § 1915(e)(2) has res judicata effect.  See Hill v.

Elting, 9 Fed. Appx. 321 (6th Cir. 2001).  Moreover, plaintiffs did not appeal the

dismissal of Sturgis I.  As such, their claims in this case are barred by res judicata.

      Even assuming the dismissal of Sturgis I did not have res judicata effect,

plaintiffs claims are still subject to scrutiny under these doctrines based on the

17

underlying state court proceedings which culminated in judgments on the merits involving the same transaction of events at issue here.  As noted above, plaintiffs have narrowed their claims to (1) fraud, (2) perjury, (3) race discrimination, and (4) unconstitutional search and seizure.  At least the first three claims were raised, or could have been raised in the state court proceedings which culminated in the termination of their parental rights.

Plaintiffs' fraud claim asserts that the minor plaintiffs were removed from their custody based on fraudulent statements, misused unspecified federal funds, and falsified unspecified legal documents.  Part of plaintiffs' claim appears to be based on allegations of fraud involving plaintiffs alleged Native American ancestry.  The fraud stems from the termination proceedings in Family Court.  As noted above, plaintiffs plead no contest to the allegations of abuse.  The Family Court held two trials over the issues of abuse and neglect.  The Michigan Court of Appeals affirmed the Family Court decisions, finding clear and convincing evidence supporting termination of plaintiffs parental rights and that the termination was in the minor children's best interest.  Plaintiffs could have raised their allegations of fraud in state court.  The state court also expressly held that there was insufficient evidence of Native American heritage.  Thus, plaintiffs fraud claim is barred by res judicata and/or collateral estoppel.[6]

---

[6]The St. Francis defendants also argue that they are entitled to immunity from plaintiffs' fraud claim to the extent they claim fraud based on testimony and reports provided to the Family Court by St. Francis.  This argument is well-taken and provides an additional reason for dismissal of the claim as to the St. Francis defendants. Michigan courts have made clear that

Social workers are granted absolute immunity from civil litigation arising out of their work as "advisors and agents" of the probate court (now to the family division of circuit court) because that court provides parents and other interested

Plaintiffs perjury claim is that Hayes (and apparently other St. Francis defendants) testified falsely during the termination trials.  Putting aside that Michigan does not recognize a civil cause of action for perjury and thus this claim is subject to dismissal for failure to state a claim, see Daoud v. DeLeau, 455 Mich. 181 (1997), plaintiffs had ample opportunity to challenge the testimony in state court and bring any issue of perjury before the state courts.  Moreover, the Michigan Court of Appeals addressed alleged discrepancies in the reports and testimony, noting that caseworkers deemed Urian Sturgis in compliance only with attending services, not in terms of benefitting from those services.  This claim is also barred by res judicata and/or collateral estoppel.

As to plaintiffs' race discrimination claim, plaintiffs allege that the St. Francis defendants, particularly Hayes, used unspecified racist tactics to demean and embarrass them and were discriminated against because the minor children were placed in white foster homes.  Again, claim could have been raised, and should have been raised, in state court during the many proceedings regarding the termination of plaintiffs' parental rights.  Indeed, the Michigan Court of Appeals noted in its decision that plaintiffs had made accusations of corruption and racism, but apparently did not pursue those claims for precise appellate review.  Under these circumstances, plaintiffs'

---

parties with a sufficient remedy for any wrongful action by a social worker. . . . as a policy behind this rule, that without the threat of civil litigation, social workers have more freedom to honestly assess a particular situation, while the court still provides parents with a forum in which to contest these assessments and recommendations.

Beauford v. Lewis, 269 Mich. App. 295, 301 (2005).  Moreover, M.C.R. 3.924 provides absolute immunity to persons who provide information to the Family Court.

race claim is barred by res judicata and/or collateral estoppel.[7]

### D.  Unconstitutional Search and Seizure

The State Defendants say that plaintiffs' constitutional claim for unlawful search and seizure is subject to dismissal for failure to state a claim.  The Court agrees.  First, it does not appear that plaintiffs have asserted any constitutional claim against the St. Francis Defendants, but rather focuses on the State Defendants.  Second, the allegations which form the basis for this claim are vague and conclusory and not specific as to any defendant.  At best, plaintiffs assert that Hurst sent two unidentified workers to plaintiffs' home and tried to force their way into the home and allegedly threatened to call the police.  Verbal threats are not seizures or actionable under § 1983.  Emmons v. McLaughlin, 874 F.2d 351, 374 (6th Cir. 1989).  Moreover, any seizures which took place were of the minor children, who were taken from plaintiffs' home based on facially valid state court orders.  Plaintiffs cannot challenge these seizures on behalf of the minor children.

---

[7]The St. Francis Defendants also argue that plaintiffs' race discrimination claim arising out of the placement of the minor children fails to state a claim.  This argument is also well-taken and provides an additional reason for dismissal of the claim.  Under the Multiethnic Placement Act (MEPA) and Title VII, discrimination is prohibited on the basis fo race in foster care and adoption matters.  MEPA is part of the Title IV-E of the Social Security Act, known as the Adoption Assistance Act (AAA).  The AAA expressly requires that states receiving federal aid for foster care and adoption services to not discriminate on the basis of race, color, or national origin in placing a child in foster care or adoption.  In other words, MEPA requires prompt placement in an appropriate home without waiting for a racially congruent placement.  The statute provides a cause of action, but that cause of action runs to the child or foster/adoptive parent.  It does not create rights in parents whose children need placement.  See 42 U.S.C. § 674(d)(3)(A), § 671(a)(18)(b)..

VII.  Conclusion

For the reasons stated above, the St. Francis Defendants and the State

Defendants' motions for summary judgment are GRANTED.  Plaintiffs' motion for

summary judgment is DENIED.  This case is DISMISSED.

SO ORDERED.

　s/Avern Cohn　　　　　　　　　　　
AVERN COHN
UNITED STATES DISTRICT JUDGE


Dated:  February 23, 2009


I hereby certify that a copy of the foregoing document was mailed to Urian R. Sturgis,
Sr.  and Jennifer Stephens, 3814 Whitney, Detroit, MI 48206 and the attorneys of record
on this date, February 23, 2009, by electronic and/or ordinary mail.

　s/Julie Owens　　　　　　　　　　
Case Manager, (313) 234-5160